A96A2188. WASHINGTON v. GEORGIA BAPTIST MEDICAL CENTER et al.
(478 SE2d 892)

JOHNSON, Judge.

This medical malpractice case arises out of the care and treat-

ment provided to D'Arcy Washington after he was shot in the chest and shoulder area as he attempted to burglarize a house in Walton County. Because of the severity of the wound, emergency medical technicians at the scene of the shooting applied military anti-shock trousers (MAST), which force blood from the legs to the trunk in order to maintain blood flow to the vital organs. Washington was initially taken to Walton Medical Center where Dr. Jose Porquez and others decided that he needed to be transported by helicopter to Georgia Baptist Medical Center in Atlanta, a trauma facility. Shortly after his arrival at Georgia Baptist, the MAST device was deflated. Dr. Michael Clark performed emergency surgery to repair the vasculature in Washington's shoulder and called in Dr. George Lee Cross, an orthopedic surgeon, to perform a fasciotomy, a surgical release of pressure, on Washington's left arm. The emergency surgery saved Washington's life, but approximately ten days later, both of Washington's legs had to be amputated as a result of renal failure, sepsis and infection. Washington alleges that the loss of his legs was caused by the failure of his care providers to follow appropriate techniques for use of the MAST device and the subsequent failure to monitor and record compartment pressures in his legs which would have indicated a need for earlier additional fascial release procedures. Washington brought suit against twenty-seven defendants, including the four to whom the trial court granted summary judgment here: Drs. Porquez, Cross and Clark, and Atlanta Vascular Specialists, P.C. (AVS). Washington appeals from the trial court's adjudication in favor of the three doctors. He does not enumerate as error the judgment entered in favor of AVS. Because the grant of summary judgment in favor of AVS was not appealed, there is nothing to review as to that judgment.

The three doctors filed various separate motions to dismiss or in the alternative for summary judgment, alleging that the affidavit filed by Washington's expert with the complaint was insufficient in that it failed to set forth any specific negligent acts or omissions committed by the individual defendants. In the alternative, the doctors alleged and submitted affidavits stating that the care and treatment given to Washington met or exceeded the standard of care of physicians generally under similar conditions and like surrounding circumstances.

Oral argument on the motions was scheduled for 9:00 a.m. March 7, 1996, nearly a year after they had been filed. On March 6, 1996, Washington filed an amendment to the affidavit of his expert purporting to satisfy the affidavit requirements of both OCGA §§ 9-11-9.1 and 9-11-56 (e). In a supplemental record filed with this Court, counsel for the doctors have submitted their affidavits as well as their copies of the amended expert affidavit indicating that it was

transmitted to them by facsimile at 4:00 p.m. on the eve of the oral argument. The faxed affidavits do not bear a stamp of the clerk of the trial court indicating filing. The amended affidavit in the record, however, bears the stamp of the clerk, showing that it was filed on March 6, 1996, but does not indicate the time it was filed. Counsel for the appellees contend that they urged the trial court at the hearing on the motions not to consider the amended affidavit because it was untimely. No transcript of the hearing is included in the record on appeal. The trial court's order does not contain separate findings of fact and conclusions of law, but states only that it considered "the appropriate affidavits." From the trial court's order, we are unable to determine whether the judge refused to consider the amended affidavit and granted summary judgment because the initial affidavit was insufficient; or whether he exercised his discretion and considered the amended affidavit, granting summary judgment on the merits of the case.

1. (a) As a threshold matter, in our de novo review of the entire record, we evaluated whether, as a matter of law, an amendment to an affidavit can be considered pursuant to OCGA § 9-11-9.1. In *Hewett v. Kalish*, 264 Ga. 183 (442 SE2d 233) (1994), the Supreme Court allowed supplementary evidence to be presented when the sufficiency of the expert affidavit in a malpractice case was challenged. "[OCGA § 9-11-9.1] (e) is only designed to preclude amendment under § 9-11-15 when the plaintiff completely fails to file an affidavit. . . . Section 9-11-9.1 (e) thus does not preclude a plaintiff from presenting evidence of his or her expert's competency at a [motion to dismiss] hearing when that expert's affidavit was initially filed with the complaint." Id. at 186 (1). Although the ruling in *Hewett* allowed additional evidence to be presented regarding the expert's competency, we do not see the holding as being limited to that particular challenge to the affidavit's sufficiency, and find that when an affidavit has been filed with the complaint, it can be amended to respond to challenges to its sufficiency. Compare *Hardman v. Knight*, 203 Ga. App. 519 (417 SE2d 338) (1992).

(b) Appellees argue on appeal that this Court should not consider the amended § 9-11-9.1 affidavit because it was not filed and served at least 24 hours before the hearing. See *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 64 (1) (397 SE2d 576) (1990); *J. B. H. v. State of Ga.*, 139 Ga. App. 199, 202 (1) (228 SE2d 189) (1976), overruled on other grounds, *In the Interest of R. D. F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996). It is well settled that the trial court has the discretion to decide whether *it* will consider affidavits not served within the time limits contemplated by the statutes. *Liberty Nat. Life Ins. Co. v. Houk*, 248 Ga. 111, 112 (1) (281 SE2d 583) (1981). This Court would have reviewed the trial court's ruling under an abuse of discretion

standard. However, as noted above, the trial court's order does not allow us to give deference to its decision with regard to the amended affidavit. Because we have no ruling from the trial court regarding the timeliness of the affidavit, there is nothing for us to review. See *Willingham v. Willingham*, 261 Ga. 674, 675 (2) (410 SE2d 98) (1991).

(c) Washington offered the amended affidavit for the dual purposes of correcting an alleged deficiency in the original affidavit and opposing the motions for summary judgment. An affidavit submitted in opposition to a motion for summary judgment is subject to the requirements of OCGA § 9-11-56 (c), which allows an adverse party to serve opposing affidavits prior to the day of hearing, and OCGA § 9-11-6 (d), which provides that "[o]pposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time." Again, in the absence of a ruling by the trial court, we will consider the issue of timeliness waived.

In reviewing the grant of summary judgment, "the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. [Cit.] This requires a de novo review of the evidence." *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). In reviewing the grant of summary judgment this Court construes the evidence and all reasonable inferences in favor of the non-movant. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). Because the amended affidavit in the record bears the stamp of the clerk of the trial court a day before the hearing, and in the absence of any ruling by the trial court, we construe the affidavit as having been timely filed and will consider it in reviewing the trial court's ruling on summary judgment.

2. Having determined that the amended affidavit is properly before us for review, we next examine de novo whether it satisfies the pleading requirements of OCGA § 9-11-9.1 and the evidentiary requirements of OCGA § 9-11-56 (e). The affidavit, as amended, is from an expert competent to testify, and it sets forth specifically at least one negligent act or omission claimed to have been committed by each defendant, and the factual basis for each such claim, thus satisfying the pleading requirements of OCGA § 9-11-9.1 (a). See *Williams v. Hajosy*, 210 Ga. App. 637, 638 (1) (436 SE2d 716) (1993). However, "[a]n affidavit which satisfies the pleading requirements of OCGA § 9-11-9.1 will not necessarily satisfy the evidentiary requirements of OCGA § 9-11-56. [Cit.]" *Hailey v. Blalock*, 209 Ga. App. 345, 346 (1) (433 SE2d 337) (1993). "To be sufficient to controvert the defendant's expert opinion and create an issue of fact, the plaintiff's expert must base his opinion on medical records which are sworn or certified copies, or upon his own personal knowledge; *and* he must

state 'the particulars in which the defendant's treatment of the plaintiff was negligent.' [Cits.]" (Emphasis in original.) *Loving v. Nash*, 182 Ga. App. 253, 255 (1) (355 SE2d 448) (1987). The affidavit submitted by Dr. W. Leigh Thompson, M.D., Ph.D., Washington's expert in this case, states his opinions are based on his review of various specified medical records and depositions. He concludes that Dr. Porquez, who was responsible for the initial evaluation of Washington, "violated the appropriate standard of care by failing to monitor both lower extremities of D'Arcy Washington and by failing to follow appropriate techniques for the use of the MAST device . . . [which] causally contributed to the necessity of amputation of Mr. Washington's lower legs." Likewise, he opined that the care provided by Drs. Cross and Clark fell below the appropriate standard of care in that the doctors failed to monitor and record compartment pressures in Washington's legs which would have "revealed increased pressures and the need for an earlier fascial release by earlier surgery. In my opinion, the delay in relieving the compartment pressures causally contributed to the necessity of amputation of Mr. Washington's lower legs." The parties do not contest Dr. Thompson's competency to testify to the matters stated in his affidavit, and the affidavit contains facts which constitute particulars regarding the doctors' treatment of Washington.

3. Appellees argue that Dr. Thompson's affidavit should not be considered because sworn or certified copies of all of the medical records which Dr. Thompson lists as having been reviewed by him in the preparation of his affidavit were not attached to his affidavit and some are not in the record at all. "A plaintiff's expert affidavit in opposition to summary judgment, which is based solely on medical records rather than on the affiant's personal knowledge of the facts, is without probative value if the affidavit neither attaches the medical records nor clearly identifies the matter in the trial record upon which it is based. OCGA § 9-11-56 (e) straightforwardly requires that '(s)worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.' This has been relaxed somewhat for the practical purpose of avoiding duplication by allowing clear identification of records already on file. [Cit.]" *Williams*, supra at 638-639 (2). The record in this case contains the depositions of Drs. Porquez, Clark, and Cross. Extensive medical records are attached to all three depositions and were identified and referred to by the doctors in their sworn testimony. The clearly identified medical records relating to the actions of these defendants are in the record of this case. Compare *Johnson v. Srivastava*, 199 Ga. App. 696, 697 (1) (405 SE2d 725) (1991), in which the medical records referred to in the affidavit were attached to the affidavit but were not a part of the record in the case. In reversing a previous decision of

this Court which narrowly construed OCGA § 9-11-56 (e), the Georgia Supreme Court held that "[i]t is the policy of this Court whenever possible to seek substantial justice and judicial economy rather than strict compliance with procedural technicalities. We hold that the office records produced and authenticated by defendant physician and placed in the record were sufficient support to plaintiffs' opposing affidavit as to satisfy the requirements of OCGA § 9-11-56 (e)." (Citation and punctuation omitted.) *Paulin v. Okehi*, 264 Ga. 604, 605 (449 SE2d 291) (1994). The testimony of the doctors in their depositions and the documents identified and referred to by them, which are part of the record, provide a sufficient factual basis from which Dr. Thompson formed his opinions as to the care provided by these defendants. That sworn or certified copies of the other records listed by Dr. Thompson, not directly related to the factual allegations made against these defendants, are not in the record is not fatal to the affidavit.

"In an action for medical malpractice the affidavit of the defendant stating that [the] care met the appropriate standard of care entitles the defendant to summary judgment if that opinion is not countered by the opinion of another expert." *Augustine v. Frame*, 206 Ga. App. 348, 350 (1) (425 SE2d 296) (1992). Here, Washington's expert's affidavit, as amended, is sufficient to raise just such a genuine issue of material fact. That in this opinion we have had to address a number of issues to reach this conclusion should not be taken as any indication that this Court has formed any opinion as to the merits of this case. As this Court noted in *Jones v. Rodzewicz*, 165 Ga. App. 635, 638 (302 SE2d 402) (1983), "[i]n reaching this conclusion, we in no way intimate an opinion as to the likelihood or probability of appellant's carrying [his] burden at trial or as to the credibility or weight of any evidence offered in support of or in opposition to the motion for summary judgment. Such matters, of course, have no place in the summary judgment procedure. [Cits.]" It follows that the trial court erred in granting summary judgment in favor of Drs. Porquez, Cross, and Clark.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 13, 1996 —
RECONSIDERATIONS DENIED DECEMBER 4, 1996 —

*Zachary & Segraves, J. Ed Segraves*, for appellant.

*Sullivan, Hall, Booth & Smith, Terrance C. Sullivan, Alston & Bird, Robert D. McCallum, Jr., Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Jr., Gleaton, Scofield, Egan & Jones, Frederick N.*

*Gleaton, Duvall, McCumber & Doverspike, Jerry D. McCumber*, for appellees.